UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                                                  No.  08 Cr. 1011 (LTS)

WINSTON J. BARRETT, JR.

        Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Defendant Winston J. Barrett, Jr. ("Defendant" or "Barrett") is charged in a one-count indictment (the "Indictment") with illegally reentering the United States after having been removed from the United States following his conviction of an aggravated felony, without having obtained the express consent of the Attorney General of the United States, or his successor, the Secretary for the Department of Homeland Security, to reapply for admission, in violation of 8 U.S.C. §§ 1326(a).  Defendant has moved to dismiss the Indictment, pursuant to Rule 12 of the Federal Rules of Criminal Procedure, on the grounds that the Indictment is legally insufficient.  The parties have submitted extensive briefing and the Court heard oral argument on the motion.  The Court has considered carefully and reviewed thoroughly all of the parties' arguments.  For the reasons explained below, Defendant's motion is denied.

### BACKGROUND

Barrett was born in Jamaica and is a citizen of that country.  (Barrett Decl. ¶ 2.)  He first entered the United States in February 1985 on an indefinite B-1, B-2 non-immigrant visa.  (Id. at ¶ 3.)  In February 1986, Defendant married an American citizen.  (Id. at ¶ 4.)  Defendant has two

biological children, one with his wife and another whom his wife legally adopted, who are American citizens. (Id. at ¶ 5.) According to Defendant, he applied to become a legal permanent resident of the United States after his marriage. (Id. at ¶ 6.) His application was pending at the time of his deportation. (Id.) Between 1985 and 1987, Defendant made several trips between the United States and Jamaica, but Defendant contends that he maintained a permanent residence in Manhattan from 1985 onwards. (Id. at ¶ 7.)

In 1986, Defendant appears to have pled guilty to Attempted Criminal Sale of Marijuana, in violation of New York Penal Code §§ 110, 221.40, a Class B Misdemeanor, and was sentenced to five days' imprisonment. (Baumgartel Decl. ¶ 8.) In 1987, Defendant pled guilty to and was convicted of Possession with Intent to Distribute a Controlled Substance in violation of District of Columbia Code § 33-541(a)(1). (Id. at ¶ 9.)

In October 1991, on the way back from a Jamaican dance festival in Dallas, Texas, Defendant was stopped by federal immigration officers in the Dallas airport. (Barrett Decl. ¶ 8.) Defendant was taken into custody and was subsequently transferred to Louisiana. (Id. at ¶ 10.) According to Defendant, he received a brief hearing in Louisiana to determine whether he would be deported. (Id. at ¶ 14.) Although attorney Craig E. Miley submitted letters on Defendant's behalf in connection with the deportation proceeding, including a request for a prompt deportation hearing that asserted that Defendant was ineligible to be permitted to depart voluntarily, (see Exs. D, E, to Gvt's Mar. 27, 2009, letter), Defendant contends that he did not have an attorney at his hearing and that he does not remember being told that he could be represented by a lawyer or request an adjournment to hire a lawyer. (Barrett Decl. ¶ 14.) Additionally, the Record of Action attached as Exhibit C to the Government's January 14, 2009, letter indicates that the hearing was held without an attorney for Defendant present. (See Ex. C to Gvt's Jan. 14, 2009, letter). Shortly after the

hearing, Barrett was deported to Jamaica.  (Barrett Decl. at ¶ 21.)

The Indictment, charging the Defendant with illegal entry and presence in the United States from in or about 2007, was filed on October 20, 2008.  (Id. at ¶ 4; Docket Entry No. 6.)

DISCUSSION

Defendant, invoking 8 U.S.C. § 1326(d), challenges the Indictment as legally insufficient because the underlying deportation order resulted from a proceeding that effectively denied him judicial review and violated due process.  Defendant also contends that the Indictment is insufficient because 8 U.S.C. § 1326(b)(2) requires that the indictment specify a relevant prior aggravated felony conviction and neither of the Defendant's convictions meets that standard.

Section 1326(d)

Under 8 U.S.C. § 1326(d), a defendant charged with illegal reentry may collaterally attack the underlying deportation order if "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."  8 U.S.C.A. 1326(d) (West 2005).  Although there are disputes about what precisely occurred at the hearing, the parties' arguments focus on whether the Defendant can satisfy the third prong by demonstrating that the entry of the underlying deportation order was fundamentally unfair.  In order to show fundamental unfairness for the purposes of 1326(d), a defendant must establish that there was a procedural error and prejudice resulting from that error.  U.S. v. Copeland, 376 F.3d 61, 70 (2d Cir. 2004).

Section 212(c)

At the time of Defendant's deportation, section 212(c) of the Immigration and Nationality Act (the "INA"), codified at 8 U.S.C. § 1182(c) ("Section 212(c)"), permitted "[a]liens

lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, [to] be admitted in the discretion of the Attorney General." 8 U.S.C.A. § 1182(c) (West 1991).  Section 212(c) relief, if granted, waives the "inadmissibility" arising from, inter alia, certain types of controlled substance convictions.  8 U.S.C.A. § 1182(a)(2) & (c) (West 1991); see also Matter of Gabryelsky, 20 I. & N. Dec. 750, 753 (1993) ("[A]lthough the respondent's controlled substance conviction does render him inadmissible under section 212(a)(2)(A)(i)(II) of the Act, he may utilize section 212(c) of the Act for the limited purpose of waiving this ground.")  Although Section 212(c) relief applies, on its face, only to exclusion proceedings, the Board of Immigration Appeals has interpreted it "to authorize any permanent resident alien with a lawful unrelinquished domicile of seven consecutive years to apply for a discretionary waiver from deportation."  I.N.S. v. St. Cyr, 533 U.S. 289, 295 (2001) (internal quotations omitted), citing Matter of Silva, 16 I. & N. Dec. 26, 30 (1976).

        Failure to inform an alien of the availability of relief under Section 212(c), if such failure was prejudicial, constitutes a fundamental procedural error.  Copeland, 376 F.3d at 72-73.  In order to establish prejudice resulting from a procedural error, Defendant must show that there is a "reasonable probability" that, but for the errors at the deportation hearing, the outcome of the hearing would have been different.  Id. at 73; see also U.S. v. Scott, 394 F.3d 111, 118 (2d Cir. 2005) ("As the Supreme Court has defined it, '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).[1]

        Defendant argues that there is a reasonable probability that he would have received

---

[1] The discretionary waiver provision was repealed in 1996.

Section 212(c) relief under a balancing of the relevant factors.  See, e.g., Scott, 394 F.3d at 119-20 ("Adverse factors include: (1) the nature and circumstances of the exclusion ground at issue; (2) other immigration law violations; (3) the alien's criminal record; and (4) evidence indicative of an alien's undesirability as a permanent resident.  Favorable factors include: (1) family ties to the United States; (2) many years of residency in the United States; (3) hardship to the alien and his family upon deportation; (4) United States military service; (5) employment history; (6) community service; (7) property or business ties; (8) evidence attesting to good character; and, in the case of a convicted criminal, (9) proof of genuine rehabilitation." (internal citations omitted)).  Although the Court agrees that many of the Section 212(c) factors appear to weigh in Defendant's favor, the Court finds, for the reasons explained below, that Defendant cannot show a reasonable probability that he would have received Section 212(c) relief and, thus, has not established prejudice on that basis.

      In order to be eligible for a waiver of deportability pursuant to Section 212(c) under the law as in effect at the time of Defendant's deportation hearing, a defendant must have been a legal permanent resident and have had a lawful unrelinquished U.S. domicile of seven consecutive years.  8 U.S.C.A. § 1182(c) (West 1991).  Defendant concedes that he was not a legal permanent resident at the time of his deportation, but argues that he could have applied for an adjustment of status to legal permanent resident.  Defendant also concedes that he was at least months short of the requisite lawful unrelinquished domicile of seven consecutive years at the time of his deportation hearing, but argues that he could have asked for an adjournment or postponement of his hearing to allow him to accrue the necessary seven years.[2]

---

[2]     The Government argues that, because Defendant entered on a non-immigrant visa, he had no relevant period whatsoever of lawful domicile in the United States.  In light of the Court's determination, infra, that Defendant has failed to meet his

Under section 245 of the INA as codified at the relevant time at 8 U.S.C. § 1255 ("Section 245"), the status of an alien could be adjusted at the Attorney General's discretion to that of an alien lawfully admitted for permanent residence if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C.A. § 1255 (West 1991). Defendant concedes that he was not facially eligible for the adjustment of status at the time of his deportation hearing because he was not "admissible." Defendant argues, however, that he could have overcome the "admissibility" barrier through Section 212(c) relief applied for simultaneously with a Section 245 application, and that the grant of the Section 245 application would have removed the legal permanent resident status barrier to Section 212(c) relief, under the principles enunciated in Matter of Gabryelsky, 20 I. & N. Dec. 750 (1993).

In Gabryelsky, which was decided two years after Defendant was deported, the Board of Immigration Appeals held that an alien who had been convicted of drug and weapons charges could simultaneously apply for a Section 212(c) waiver, which would provide relief from deportation in connection with the drug conviction, and for adjustment of status, which would provide relief from deportation in connection with the weapons conviction. Gabryelsky, 20 I. & N. at 755-56. This simultaneous application allowed an alien to use the two forms of relief to eliminate the obstacles to relief posed by the different types of convictions even though neither of the forms of relief would have, separately and independently, waived all grounds of deportability. Id. Gabryelsky, however, was at the time "statutorily eligible to apply for [a Section 212(c)] waiver

---

Section 1326(d) burden, it is unnecessary for the Court to address the disagreement as to domiciliary status.

insofar as he [was] a lawful permanent resident who apparently ha[d] maintained a lawful unrelinquished domicile in the country for seven consecutive years." Id. at 753.  Thus, unlike Defendant in this case, Gabryelsky was facially eligible for at least one form of statutory relief and was allowed to "bootstrap" the two forms of relief to overcome the two types of convictions (weapons and drugs) that rendered him deportable.

    The Court does not read Gabryelsky as permitting an alien who is not facially eligible for either form of relief to apply simultaneously for an adjustment of status and a Section 212(c) waiver in an attempt to cure his ineligibility for each one with relief available only through the other process.  Indeed, the Board of Immigration Appeals' discussion of Matter of Roman, 19 I. &. N. Dec. 855 (1988), in Gabryelsky is consistent with this more limited understanding of Gabryelsky's scope.  The Board distinguished Roman, noting that the respondent in that matter "could not establish combined eligibility for nunc pro tunc permission to reapply for admission and a waiver of inadmissibility pursuant to section 241(f) of the Act, where she was not separately eligible for either form of relief.  The alien could not "bootstrap" eligibility from one waiver to the other since she would not be eligible for either form of relief without the other waiver having first been granted." Gabryelsky, 20 I. & N. Dec. at 755, n. 3.

    Defendant's theory of procedural error, prejudice and fundamental unfairness rests on a series of assumptions as to the immigration court's serial exercise of its discretion in his favor, including with respect to types of relief for which he was facially ineligible at the time of his deportation hearing.  The immigration judge would have had to anticipate a Gabryelsky holding broader than the Board's actual decision two years later, decide in light of the potential for simultaneous mutually curative relief that adjournments of the deportation hearing, potentially for

years,[3] were appropriate in order to facilitate simultaneous Section 212(c) and Section 245 applications, presumably have reached some conclusion that both types of relief would likely be granted and, on the basis of that thought process, advise Defendant, whose counsel of record had specifically disavowed voluntary departure and requested an expedited deportation hearing, that he could or should, instead, have made the requisite series of applications.

The Court finds Defendant's contentions far too speculative and attenuated to satisfy the requirement that he demonstrate a reasonable probability that he would have received Section 212(c) relief, and that Defendant thus has failed to establish prejudice in connection with the underlying deportation order on that ground.

 Voluntary Departure

Defendant also contends, in support of his Section 1326(d) challenge, that the underlying deportation order was procedurally flawed because the immigration judge should have informed Barrett of the ability to apply for voluntary departure and he was prejudiced by that failure. However, as the Board of Immigration Appeals recognized in In re Cordova, 22 I. & N. Dec. 966 (1999), immigration judges did not have an obligation to inform aliens of their right to voluntary departure prior to 1997. Id. at 972, n. 4 ("The previous regulation requiring Immigration Judges to inform aliens of apparent eligibility for relief did not include voluntary departure. . . . Rather, the opportunity to apply for voluntary departure was described in 8 C.F.R. § 242.17(b), which contained no notification requirement."). In light of the fact that the immigration judge, at the time of Defendant's deportation hearing, did not have an obligation to inform Barrett of the

---

[3] Because Section 245 adjustment of status requires the immediate availability of a visa, the simultaneous applications for Section 212(c) and Section 245 relief would have had to abide a successful visa petition for Defendant by his citizen spouse and the availability of the visa under the relevant visa preference schedules.

ability to apply for voluntary departure, the failure to so inform him was not a procedural error and Defendant thus cannot meet the Section 1326(d) relief requirements on such grounds.

Failure to Allege an Aggravated Felony

Defendant, who contends for reasons that need not be detailed here that his 1987 conviction for Possession with Intent to Distribute a Controlled Substance does not constitute an aggravated felony conviction within the meaning of 8 U.S.C. §1326(b)(2), also moves to dismiss the Indictment as insufficient on the grounds that the Indictment fails to allege that he was previously convicted of an aggravated felony and, thus, cannot sustain a charge under Section 1326(b)(2).  As Defendant has acknowledged, in Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court recognized that Section 1326(b)(2) is a penalty provision and does not define a separative substantive offense.  Id. at 226-227.  The conviction of an aggravated felony is not technically an element of the charged offense (illegal reentry in violation of 8 U.S.C. § 1326(a)) and need not be alleged in the Indictment.  Defendant argues that subsequent opinions have called Almendarez-Torres' holding into question, but identifies no decision explicitly overruling that holding.  Unless and until Almendarez-Torres is overruled, this Court must construe the statute in accordance with that decision.  See, e.g., Agostini v. Felton, 521 U.S. 203, 237 (1997) (directing lower courts to "follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions" (internal quotations and citations omitted)).  Defendant's motion to dismiss the Indictment on the ground that the Indictment fails to allege an aggravated felony is therefore denied.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Indictment is denied in all respects.  The Clerk of Court is respectfully requested to terminate Docket Entry No. 7.  The

parties shall appear for a pre-trial conference on May 19, 2009, at 4:30 p.m.

SO ORDERED.

Dated: New York, New York
May 15, 2009

/s/ Laura Taylor Swain

LAURA TAYLOR SWAIN
United States District Judge